

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 17, 2020**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CYNTHIA SANTOS, | § | CASE NO. 19-33256-SGJ13 |
|     **Purported Debtor.** | § | (Chapter 13) |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER ON SHOW CAUSE ORDER REQUIRING STEVE LE AND GABRIEL SANTOS TO APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED FOR CONDUCT DESCRIBED HEREIN WITH RESPECT TO THE FILING OF AN UNAUTHORIZED CHAPTER 13 PETITION AND RELATED SCHEDULES AND STATEMENTS

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 3

II.  Procedural History ............................................................................................... 4

III. Jurisdiction ......................................................................................................... 7

IV. Findings of Fact ................................................................................................... 7

    A.    The Parties and Counsel. ............................................................................. 7

    B.    Mr. Le's Testimony, Public Disciplinary Record and Experience Before this Court as a Debtor's Attorney ......................................................................................... 8

    C.    Mr. Santos's Testimony ............................................................................ 16

    D.    Mrs. Ramos's Testimony ........................................................................... 17

V.  Conclusions of Law ........................................................................................... 19

    A.    The Bankruptcy Code Provisions and Rules that Mr. Le Violated. ........................... 19

        1.    *Mr. Le Violated 11 U.S.C. § 526.* ............................................................... 19

        2.    *Mr. Le Violated 11 U.S.C. § 527.* ............................................................... 20

        3.    *Mr. Le Violated 11 U.S.C. § 528.* ............................................................... 21

        4.    *Mr. Le Violated Federal Rule of Bankruptcy Procedure 1008.* ........................... 22

        5.    *Mr. Le Violated Federal Rule of Bankruptcy Procedure 5005.* ........................... 23

        6.    *Mr. Le Violated Federal Rule of Bankruptcy Procedure 9011.* ........................... 24

        7.    *Mr. Le Violated the Texas Disciplinary Rules of Professional Conduct (the "TDRPC")* .. 26

        8.    *Local Bankruptcy Rule 2090-2(b) Authorizes this Court to Discipline Mr. Le for Unethical Behavior and Failure to Comply with Other Rules.* ........................................ 28

    B.    Sanctions to be Imposed on Mr. Le: Indefinite Suspension, Disgorgement of Fees, and Additional Ethics CLE. ................................................................................ 29

        1.    *A Note on the Case Law this Court Considered.* ............................................. 29

        2.    *Indefinite Suspension, Disgorgement of Fees, and Ethics CLE are Appropriate.* .............. 30

    C.    Sanctions to be Imposed on Mr. Santos: Ten-Year Bar on Filing Bankruptcy; Criminal Referral to the United States Attorney. ............................................................. 33

**MEMORANDUM OPINION AND ORDER ON SHOW CAUSE ORDER REQUIRING STEVE LE AND GABRIEL SANTOS TO APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED FOR CONDUCT DESCRIBED HEREIN WITH RESPECT TO THE FILING OF AN UNAUTHORIZED CHAPTER 13 PETITION AND RELATED SCHEDULES AND STATEMENTS**

## I.   INTRODUCTION

This is the story of Gabriel Santos's wrongheaded scheme to manipulate the bankruptcy system, of attorney Steve Le's failure to uphold the integrity of his profession, and of the stress they both caused to Cynthia Ramos—Gabriel Santos's ex-wife, an innocent victim, and the Purported Debtor in this case.[1]

In a nutshell, Gabriel Santos, who had filed bankruptcy three times, was barred from filing bankruptcy for 180 days after having his most recent Chapter 13 case dismissed with prejudice. To work around this bar, Mr. Santos sought to file bankruptcy *in his ex-wife's name*, without a power of attorney or any other form of authorization, to prevent imminent foreclosure on his house.[2] He falsified emails purportedly from his ex-wife authorizing the bankruptcy and sent them to Mr. Le, an attorney, the day before the scheduled foreclosure. Mr. Santos also brought Mr. Le $3,500 cash. Mr. Le, perhaps well-intentioned, nevertheless ignored his ten years of experience as a debtor's attorney (and his many hours of ethics training) and filed a Voluntary Chapter 13 Petition, Bankruptcy Schedules, a Statement of Financial Affairs ("SOFA") and other items, using Mrs. Ramos's name and social security number. Mr. Le never spoke to Mrs. Ramos or obtained a single wet signature. Mr. Santos said his ex-wife was out-of-town and unavailable to talk to Mr.

---

[1] "Cynthia Santos" is the name listed as the debtor in the Voluntary Chapter 13 Petition and other documents filed with the court. Cynthia Santos is the former name of Cynthia Ramos, the victim of an apparent bankruptcy fraud in this case. As described herein, Mrs. Ramos never intended to file bankruptcy, so she is not a debtor—she is a "Purported Debtor." Furthermore, out of respect for Mrs. Ramos, this court will refer to her in this Memorandum Opinion and Order either by her actual name, Mrs. Ramos, or as the "Purported Debtor," but not by the former name that was forged on the documents filed with the court.

[2] For reasons that are immaterial to this court's analysis, Mrs. Ramos's name was still on the bank note for Mr. Santos's house, despite their having divorced more than a decade earlier in 2009.

Le on the telephone—yet, somehow, she was supposedly able to take credit counseling from a remote location and email Mr. Le purported profit and loss statements for a business. Instead of taking reasonable steps to protect himself and the Purported Debtor in light of the strange circumstances he faced, Mr. Le decided to forge Mrs. Ramos's electronic signature at least six times on documents filed with the court—allegedly assuming, in good faith, that he had her permission—via her ex-husband—to do so.

The results of these men's actions were unquestionably harmful for Mrs. Ramos, whose credit has been adversely affected and whose name is now permanently etched in the bankruptcy database to be searched by banks, employers, and the public at large. Now, Mrs. Ramos, the court, Mr. Le, and all attorneys involved in this matter must commit untold hours and resources to try to unwind a grievous mistake that was easily preventable had Mr. Le, the attorney at the center of this mess, simply remembered his ethics training.

## II. PROCEDURAL HISTORY

On September 30, 2019, attorney Steve Le filed a Chapter 13 Bankruptcy Petition on behalf of the Purported Debtor using the CM/ECF system.[3] The electronic file containing the Petition also contained the Purported Debtor's (a) Schedules; (b) Declaration; (c) SOFA; (d) Statement of Current Monthly Income; (e) Verification of Mailing List for the Creditor Matrix; and several other documents. In all, the first docket entry filed in this case contains six electronic signatures that read, "/s/ Cynthia Santos."

The same day, Mr. Le also filed a Certificate of Credit Counseling,[4] which indicates that the Purported Debtor completed online credit counseling, and a Form 121 Social Security Number

---

[3] Case No. 19-33256-sgj13, Docket No. 1. Herein, docket entries will be cited as "ECF [#]" because all docket entries relate to the same bankruptcy case and are, at this point, accessible through the CM/ECF system.
[4] ECF 2.

Verification,[5] which contains Mrs. Ramos's social security number and an electronic signature that reads, "/s/ Cynthia Santos."

Eight days later, on October 8, 2019, the standing Chapter 13 Trustee, Mr. Tom Powers, filed a Motion for a Show Cause Order, alleging that "Cynthia Ramos f/k/a Cynthia Santos contacted the Trustee's office and stated that she did not file the Voluntary Petition and did not give anyone permission to do so on her behalf."[6] The Chapter 13 Trustee also filed a Motion to Dismiss,[7] and Mr. Le, in an attempt to undo his mistake, filed a Motion to Expunge the case on behalf of Mrs. Ramos.[8]

The court held a hearing on the Trustee's Motion for a Show Cause Order and Motion to Dismiss on November 18, 2019.[9] Mr. Powers and an attorney for the U.S. Trustee, Erin Schmidt, both appeared. Mr. Le, represented by Corbet Bryant, testified. Finally, Mrs. Ramos testified and Mr. Santos, her ex-husband, also testified.[10]

After hearing from all parties-in-interest, the court found that this bankruptcy case was improperly filed without Mrs. Ramos's authorization. Reticent to eliminate evidence of potential bankruptcy fraud and preempt any potential criminal referral against Mr. Santos, the court declined to expunge the case.[11] Instead, the court requested that the Chapter 13 Trustee submit an order of dismissal. The court further requested that the order contain strong language indicating in the clearest possible terms that what happened to Mrs. Ramos was tantamount to identity theft, so that

---

[5] ECF 3.

[6] ECF 9.

[7] ECF 10.

[8] ECF 11.

[9] ECF 9. Herein, the court will refer to the hearing held on November 18, 2019 as the "November 18 hearing."

[10] Neither Mrs. Ramos nor Mr. Santos were represented by counsel at the November 18 hearing. However, by this point, Mr. Le had already taken it upon himself to try and undo the unauthorized bankruptcy in order to help Mrs. Ramos and Mrs. Ramos was aware of Mr. Le's intent.

[11] *See In re Dick*, Case No. 05-80347-BJH13, 2006 WL 6544157, at *5 n. 3 (Bankr. N.D. Tex. May 19, 2006) ("The Court is also hesitant to order expunction, as its practical effect would be to destroy evidence of conduct which may be criminal.").

she may use the order to clear her name with regard to the credit reporting agencies, banks, and anyone else who may become aware of the purported bankruptcy filing. On November 26, 2019, the court entered its Memorandum Opinion and Order Dismissing Unauthorized Bankruptcy to that effect.[12]

At the November 18 hearing, the court also granted the Chapter 13 Trustee's Motion for a Show Cause Order and requested that he submit a form of show cause order that directed Mr. Le and Mr. Santos to appear at a future hearing.[13] After advising everyone in the room that this unauthorized filing triggered Title 18 implications and after explaining to Mr. Santos and Mrs. Ramos that those implications meant the court would consider referring the case to the U.S. Attorney's office for criminal prosecution, the court exhorted Mr. Santos to hire a lawyer to represent him at the next hearing. Accordingly, on November 26, 2019, the court entered its Show Cause Order Directing Steven Le and Gabriel Santos to Appear for another hearing on February 3, 2020.[14]

On February 3, 2020, the same parties-in-interest returned to court pursuant to the Show Cause Order. This time, Mr. Santos appeared represented by attorney Willie Cantu. Before the evidentiary hearing began, Mr. Cantu made an oral motion to continue the hearing on grounds that he was unprepared to provide effective assistance of counsel to Mr. Santos. Mr. Cantu represented to the court that he was not aware of the nature of this show cause hearing before arriving at court that day because the ECF transcript of the last hearing was still unavailable to the public at that time. Mr. Cantu also stated that he was only hired by Mr. Santos on Friday, January 30 (just three days prior) and that Mr. Santos had given him a different idea of what would happen at the

---

[12] ECF 25.
[13] The court reserved jurisdiction post-dismissal to address the issues raised in the Chapter 13 Trustee's Motion.
[14] ECF 23. Herein, the court will refer to the hearing held on February 3, 2020 as the "February 3 hearing."

February 3 hearing. The Chapter 13 Trustee, counsel for Mr. Le, and counsel for Mrs. Ramos, Julianne Parker, each opposed the oral motion to continue. The court denied the oral motion to continue on grounds that Mr. Santos had been afforded ***two-and-a-half months' notice*** of the February 3 hearing (and the nature of it), and that the court had strongly urged Mr. Santos to hire counsel.[15] Accordingly, the parties proceeded to put on evidence and make arguments on the record.

## III. <u>JURISDICTION</u>

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). The bankruptcy court has authority to adjudicate this matter pursuant to Miscellaneous Rule No. 33 for the Northern District of Texas.

## IV. <u>FINDINGS OF FACT</u>

### A. The Parties and Counsel.

There are, essentially, four individuals involved in various capacities in this bankruptcy matter, one of whom is known by a different name than the name used on all the documents filed with this court. Each party was represented by counsel at one or both of the hearings before this court. The following table is intended to make clear who participated in the proceedings.

| Person | Relation to Case | Counsel | Representation |
|---|---|---|---|
| Cynthia Ramos *f/k/a* Cynthia Santos | Victim of identity theft and forged bankruptcy filing. Former spouse of Gabriel Santos (divorced 2009). | Julianne Parker | At the February 3 hearing only. |
| Gabriel Santos | Perpetrator of identity theft and forged bankruptcy filing. Hired Mr. Le to file bankruptcy | Willie Cantu | At the February 3 hearing only. |

---

[15] The court recognizes that Mr. Le never challenged whether notice of the show cause hearing was proper against him. In fact, Mr. Le attended both the November 18 hearing and the February 3 hearing—both times represented by separate counsel. Thus, Mr. Le has been afforded complete due process under the law in this matter.

| Person | Relation to Case | Counsel | Representation |
|---|---|---|---|
| | in his ex-wife's former name. | | |
| Steve Le | Attorney hired by Gabriel Santos to file bankruptcy using Cynthia Ramos's social security number. Testified at both the November 18 and February 3 hearings. | Corbet Bryant | At both the November 18 and February 3 hearings. |
| Tom Powers | Standing Chapter 13 Trustee. Testified at both the November 18 and February 3 hearings. | Erin Schmidt | At both the November 18 and February 3 hearings. |

**B.      Mr. Le's Testimony, Public Disciplinary Record and Experience Before this Court as a Debtor's Attorney.**

The court makes these findings of fact based in part on Mr. Le's testimony and Mrs. Ramos's testimony from the November 18 and February 3 hearings. The court finds Mr. Le and Mrs. Ramos to be credible witnesses. The court does not find Mr. Santos to be a credible witness but will address his testimony in a separate section, below. In making its findings of fact, this court also takes judicial notice of the evidentiary record made at both hearings and of all documents filed with the court in this bankruptcy case.[16]

On Thursday, September 26, 2019, the Purported Debtor's ex-husband, Mr. Santos, arrived at the offices of Mr. Le with $3,500 cash in hand seeking to stop a foreclosure on his home that was scheduled for October 1, 2019—five days later. Mr. Santos and Mr. Le discussed the possibility of filing bankruptcy as a means to prevent the foreclosure. Then, on Friday, September 27, 2019, Mr. Le ran an ECF/PACER check to determine Mr. Santos's eligibility to file bankruptcy

---

[16] Under Fifth Circuit law, a court may take judicial notice of (a) prior court proceedings as a matter of public record; (b) its own records; (c) related proceedings and records in cases before that court; and (d) all documents filed with the court in the bankruptcy case. *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019); *State of Fla. Bd. of Trustees of Internal Imp. Tr. Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975); *Sherman v. Greenstone Farm Credit Services, ACA*, Case No. 3:11-CV-0710-N, 2011 WL 2038573, at *3 n. 6 (N.D. Tex. May 24, 2011); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 142 n. 13 (Bankr. N.D. Tex. 2014).

and found that Mr. Santos, who had filed bankruptcy multiple times, was barred from refiling by an order entered on April 23, 2019 dismissing his prior Chapter 13 case with prejudice for 180 days.[17] So, Mr. Le notified Mr. Santos that he was barred from refiling. According to Mr. Le, Mr. Santos called him later that day and "asked [him] whether his *ex-wife* can file."[18] Mr. Le then explained to Mr. Santos that if the home mortgage note was under Mrs. Santos's (*i.e.*, Mrs. Ramos's) name, she could file bankruptcy to stop the foreclosure.[19] Mr. Santos then told Mr. Le that he would call Mrs. Ramos and get back to him.[20]

On Monday, September 30, 2019—the day before the scheduled foreclosure—Mr. Santos called Mr. Le and asked if he could come to Mr. Le's office to file bankruptcy. Mr. Le explained that he needed information from Mrs. Ramos to file for her. That is when Mr. Le received two emails purportedly from Mrs. Ramos, with her former name in both the email address and the signature; one, sent at 8:15 a.m., containing a credit counseling certificate, and the other, sent at 8:50 a.m., containing a profit and loss statement for a business.[21] The court believes, based on the preponderance of the evidence, that it was Mr. Santos who created the email address and sent the emails to Mr. Le to induce him to file bankruptcy. The second email, sent to Mr. Le at 8:50 a.m., read as follows:

> Steve,
> My name is Cynthia Santos, and my *ex husband* [sic] has filled me on [sic] everything. I have never filed for bankruptcy before. I will be filing for bankruptcy.

---

[17] *See* Case No. 19-30455-HDH13, Docket No. 27. The 180-day bar prevented Mr. Santos from refiling bankruptcy until late-October—well past the October 1 foreclosure date.

[18] ECF 31 at 7:15-16 (emphasis added). The court interrupted Mr. Le's testimony to clarify whether Mr. Santos truly said "ex-wife" and when exactly Mr. Le learned that Mrs. Ramos was no longer married to Mr. Santos, but Mr. Le could not provide a straightforward answer, instead asserting that he was unsure of their marital status because Mr. Santos referred to Mrs. Ramos as his wife in text messages. *See id.* at 7:17-8:13. To the contrary, Mr. Santos testified that he had always referred to Cynthia Ramos as his ex-wife when speaking with Mr. Le. *Id.* at 16:19-25.

[19] *Id.* at 9:8-13.

[20] *Id.*

[21] *See id.* at 9:14-11:7. The two emails were sent from the same email address: cynthiasantos1029@yahoo.com. Copies of the two emails were marked as Exhibits 1 and 2, respectively, and admitted into evidence at the November 18 hearing. The Chapter 13 Trustee also presented the emails as Exhibits 2 and 3 in its argument at the February 3 hearing.

I sent you my certificate from the credit counseling class to your email. Attached is my profit and loss statement verifying my income. Gabriel stated he had sent you all documents need [sic] from him. I am attending a funeral this morning and will be able to answer any questions you may need afterwards. If you have questions or need anything else please let me know.

Sincerely,
Cynthia Santos[22]

After receiving the emails, Mr. Le told Mr. Santos that he would still have to speak to Mrs. Ramos to make sure she wanted to file. At that point, Mr. Santos allegedly dialed a number that went straight to voicemail and explained to Mr. Le that Mrs. Ramos was unavailable because she was at a funeral in a remote location without any signal (despite her having purportedly completed credit counseling and sent two emails to Mr. Le earlier that morning).[23] Mr. Santos allegedly assured Mr. Le that Mrs. Ramos would come to his office to provide additional information and documents, including a tax return and a copy of her driver license, after she returned from the funeral on Wednesday, October 2.[24] At no point leading up to the filing of the bankruptcy Petition did Mr. Le receive a purported power of attorney from Mr. Santos or Mrs. Ramos. Mr. Le testified that the emails and Mr. Santos's assurances were the impetus of his ill-fated decision to file bankruptcy using Cynthia Ramos's social security number.[25]

The Chapter 13 Trustee examined Mr. Le again at the February 3 hearing. Mr. Le's testimony revealed what the court considers to be a number of additional red flags that should have prevented him from filing the bankruptcy Petition. For example,

i.   Mr. Le testified that he knew a client's wet signature was required ***before*** an attorney could file a bankruptcy Petition on the client's behalf—nevertheless, he ignored his knowledge

---

[22] *See* Exhibit 2 (emphasis added), Chapter 13 Trustee's Witness and Exhibit List for the February 3, 2020 hearing.
[23] *See* ECF 31 at 11:9-23.
[24] *Id.*
[25] *See Id.* at 11:24-12:7.

and training and proceeded to file a Petition, Schedules, Statement of Financial Affairs, and other documents without Mrs. Ramos's actual signature.[26]

ii.    Mr. Le further testified that Mr. Santos paid Mr. Le's fee of $3,500 in cash.[27] A person with $3,500 cash-in-hand wanting to file bankruptcy in someone else's name is unusual, to say the least, and should have made Mr. Le suspicious. Perhaps it did, considering Mr. Le marked "Debtor," rather than "Other (specify)," as the source of compensation paid to him on the Disclosure of Compensation of Attorney for Debtor and then signed the certification at the bottom of the form.[28]

iii.    Mr. Le further testified that Mr. Santos provided Mrs. Ramos's social security number, included in response to Question 3 of the Voluntary Petition.[29]

iv.    Mr. Le further testified that, at the time he was completing the bankruptcy Petition, he believed the Purported Debtor's address was 14864 Ledgeview Ct., Balch Springs, TX 75180, as indicated in response to Question 5 of the Voluntary Petition.[30] This is unusual because this is the address of the house that was scheduled for foreclosure, where Mr. Santos lived. Given that one of the purported Cynthia Santos emails referred to Gabriel Santos as her ex-husband and that Mr. Le received the email before completing the Petition, Mr. Le had reason to know Mrs. Ramos and Mr. Santos were divorced. And, generally speaking, divorced persons do not live together.

v.    Mr. Le further testified that he could not have known whether Mrs. Ramos owned any property that posed an imminent threat to public health or safety because he was going

---

[26] Audio Recording, 2/3/2020 Hearing at 10:28:17 a.m.
[27] Audio Recording, 2/3/2020 Hearing at 10:29:23 a.m.
[28] Audio Recording, 2/3/2020 Hearing at 10:54:00 a.m.; ECF 1 at 41 (*i.e.* the Voluntary Petition, which was marked as Chapter 13 Trustee's Exhibit 1 at the February 3 hearing).
[29] Audio Recording, 2/3/2020 Hearing at 10:29:55 a.m.; ECF 1 at 1. Mrs. Ramos's social security number is also included on the Verification of Mailing List form attached to the Petition. ECF 1 at 42.
[30] Audio Recording, 2/3/2020 Hearing at 10:30:12 a.m.; ECF 1 at 2.

through the questions line-by-line with Mr. Santos, not Mrs. Ramos. He said he may have marked "No" in response to Question 14 simply because Question 14 is not normally marked "Yes" on Voluntary Petitions.[31] In other words, Mr. Le was consciously aware that he was fabricating answers to questions and, yet, it never crossed his mind that he should get the information from Mrs. Ramos, not from her ex-husband.

vi.  Mr. Le testified that, despite the electronic signature dated September 30, 2019 and located on Page 6 of the Voluntary Petition, he did not actually obtain a wet signature from Mrs. Ramos on that date.[32]

vii. Mr. Le further testified that, by signing the Petition on page 7, he certified to the court that he communicated a number of things to the Purported Debtor, Mrs. Ramos, even though he knew he had communicated none of those things to her and had not made a reasonable inquiry regarding the accuracy of the information in the schedules at that time.[33]

viii. Mr. Le further testified that he marked "No" in response to Question 7 regarding whether the Purported Debtor owned any household electronics even though he knew it was highly unlikely that she did not own any household electronics, such as a television.[34]

ix.  Mr. Le further testified that he marked "No" in response to Question 8 regarding whether the Purported Debtor owned any collectibles of value. When pressed as to why he marked no, Mr. Le testified that he marked no without making any inquiry whatsoever.[35]

---

[31] Audio Recording, 2/3/2020 Hearing at 10:31:30 a.m.; ECF 1 at 4.
[32] Audio Recording, 2/3/2020 Hearing at 10:33:17 a.m.; ECF 1 at 6.
[33] Audio Recording, 2/3/2020 Hearing at 10:33:42 a.m.; ECF 1 at 7.
[34] Audio Recording, 2/3/2020 Hearing at 10:35:50 a.m.; ECF 1 at 11.
[35] Audio Recording, 2/3/2020 Hearing at 10:36:38 a.m.; ECF 1 at 11.

x.    Mr. Le further testified that he marked "No" in response to Question 12 regarding whether the Purported Debtor owned any Jewelry and that, despite marking no, it was unlikely that Mrs. Ramos, a woman, owned no jewelry whatsoever.[36]

xi.    Mr. Le further testified that he knew that he could file a barebones bankruptcy Petition without filing the Schedules. When asked why he did not wait to file the Schedules and SOFAs until the Purported Debtor could come to his office on Wednesday, Mr. Le responded that he had planned to verify the Schedules with Mrs. Ramos on Wednesday and make amendments as necessary. The Chapter 13 Trustee asked Mr. Le whether he knew that the Schedules constituted representations to the court under penalty of perjury and that his client could face sanctions if amended filings were highly contradictory. To that, Mr. Le was unresponsive.[37]

xii.    Mr. Le further testified that, despite marking "No" in response to Question 1 on Schedule H, with regard to whether the Purported Debtor had any co-debtors, he knew from reviewing a copy of the home mortgage loan, which Mr. Santos furnished, that Mr. Santos and Mrs. Ramos (who went by Mrs. Santos at the time the loan was executed) were both named on the note.[38]

xiii.    Mr. Le further testified that he populated Question 8a. on Schedule I using the Purported Debtor's alleged profit and loss statement, which was attached to one of the two emails he received on September 30, 2019. The second column, which reads "For Debtor 2 *or non-filing spouse*," (emphasis added) is marked "N/A" in response to each question, suggesting

---

[36] Audio Recording, 2/3/2020 Hearing at 10:37:28 a.m.; ECF 1 at 12.
[37] Audio Recording, 2/3/2020 Hearing at 10:40:50 a.m.; *see also* Fed. R. Bankr. P. 1007(c).
[38] Audio Recording, 2/3/2020 Hearing at 10:42:49 a.m.; ECF 1 at 21.

that Mr. Le knew Mr. Santos and Mrs. Ramos were no longer married as of September 30, 2019.[39]

xiv.   Mr. Le further testified that he populated Schedule J, Expenses, using numbers he received from Mr. Santos. When asked whether, at that time, he thought Mr. Santos and Mrs. Ramos were living together, Mr. Le said he did not remember, but that, at one point, Mr. Santos stated in a text that Mrs. Ramos had to go to her apartment to get a tax return and that it appeared odd to him. When pressed as to whether, at that point, Mr. Le made any change in the Petition to Question 5 regarding where the Purported Debtor lived, Mr. Le said he did not.[40]

xv.   Mr. Le further testified that he signed "/s/ Cynthia Santos" underneath the statement reading "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct," even though Mrs. Ramos had not, in fact, read the summary and schedules or provided a wet signature.[41]

xvi.   Mr. Le further testified that he marked "Not married" in response to Question 1, which reads "What is your current marital status," on the SOFA that he completed on September 30, 2019, suggesting that Mr. Le knew Mr. Santos and Mrs. Ramos were no longer married as of that date.[42]

xvii.   Mr. Le further testified that, on the SOFA, he marked "No" in response to Questions 7 through 13 without having any idea whether the Purported Debtor had made payments to

---

[39] Audio Recording, 2/3/2020 Hearing at 10:43:35 a.m.; ECF 1 at 22-23.
[40] Audio Recording, 2/3/2020 Hearing at 10:44:11 a.m.; ECF 1 at 25.
[41] Audio Recording, 2/3/2020 Hearing at 10:46:00 a.m.; ECF 1 at 26.
[42] Audio Recording, 2/3/2020 Hearing at 10:46:29 a.m.; ECF 1 at 27.

insiders within one year prepetition, was party to a lawsuit within one year prepetition, was subject to a creditors' set-off rights within 90 days prepetition, etc.[43]

xviii. Mr. Le further testified that he signed "/s/ Cynthia Santos" underneath the penalty of perjury statement on the last page of the SOFA even though Mrs. Ramos had not provided answers to the questions on the SOFA or a wet signature.[44]

xix. Mr. Le further testified that he signed "/s/ Cynthia Santos" underneath the penalty of perjury statement on the last page of Official Form 122C-1 Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period even though Mrs. Ramos had not provided six months of income or a wet signature.[45]

xx. Mr. Le further testified that he signed "/s/ Cynthia Santos" on the Verification of Mailing List even though Mrs. Ramos had not actually signed the document. He also testified that he listed only one creditor, Select Portfolio Services—presumably the mortgage loan servicer—even though it was unreasonable that Mrs. Ramos would have only one creditor to notify of a bankruptcy filing.[46]

xxi. Mr. Le further testified that he understood he was not required to file the SOFA with the Petition and that he could have waited until after he had a chance to meet with Mrs. Ramos to file it—just like the Schedules.[47]

It was not until Wednesday, October 2, 2019, when Mrs. Ramos—upon receiving a credit alert regarding a bankruptcy filing using her social security number—reached out to Mr. Le to ask why he filed a bankruptcy on her behalf, that Mr. Le realized that Mrs. Ramos had not authorized

---

[43] Audio Recording, 2/3/2020 Hearing at 10:50:25 a.m.; ECF 1 at 28.
[44] Audio Recording, 2/3/2020 Hearing at 10:52:42 a.m.; ECF 1 at 33.
[45] Audio Recording, 2/3/2020 Hearing at 10:53:40 a.m.; ECF 1 at 36.
[46] Audio Recording, 2/3/2020 Hearing at 10:54:51 a.m.; ECF 1 at 42-43.
[47] Audio Recording, 2/3/2020 Hearing at 10:55:45 a.m.; *see also* Fed. R. Bankr. P. 1007(c).

Mr. Santos to file the bankruptcy.[48] Mr. Le testified on numerous occasions, during both the November 18 hearing and the February 3 hearing, that he had only filed the bankruptcy Petition because he wanted to help Mr. Santos save his home.[49]

According to Mr. Le's profile on the State Bar of Texas's website, he has been licensed to practice law in Texas since May 1, 2009 and he has no public disciplinary history in the State of Texas or any other state.[50] Furthermore, according to the Bankruptcy Clerk's records, Mr. Le has filed 120 bankruptcy cases dating back to August 2010, nine of which remain active.

### C.    Mr. Santos's Testimony.

At the November 18 hearing, the Chapter 13 Trustee called Mr. Santos to testify second, after Mr. Le but before Mrs. Ramos. Mr. Santos's testimony reflects a story that does not comport with any of the other testimony heard in this case, including, importantly, the testimony of Mrs. Ramos—his ex-wife and the victim of his unscrupulous behavior. During examination, Mr. Santos represented that Mrs. Ramos had actually authorized the bankruptcy.[51] The court did not find this statement credible. He also stated that Mr. Le knew Mrs. Ramos and Mr. Santos were divorced from the outset. Mr. Santos's assertion that Mr. Le knew Cynthia Ramos was not Mr. Santos's wife is, perhaps, the only credible testimony Mr. Santos provided to the court. This is because in the very first line of one of the phony emails that Mr. Le received, the sender, purporting to be "Cynthia Santos," specifically identified Gabriel Santos as her "ex husband."[52]

---

[48] *See* ECF 31 at 8:5-12.

[49] *See, e.g., id.* at 12:5-7.

[50] State Bar of Texas, Profile of Attorney Steve Le (License No. 24067723), https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=307541, accessed 2/6/2020 at 4:12 p.m.

[51] ECF 31 at 15:13-17:10.

[52] *See* discussion *supra* Section III.B. Mr. Le testified that he decided to file bankruptcy at least partially because of these phony emails, so he must have known Gabriel Santos was no longer married to the Purported Debtor before he filed the Petition. Regardless, the court finds that nearly every other statement Mr. Santos made at the November 18 hearing to be a lie and in direct contradiction to the facts of this case and the testimonies of Mrs. Ramos and Mr. Le.

Later, at the February 3 hearing, Mr. Santos was examined by the Chapter 13 Trustee again, and also by Mr. Bryant and by Ms. Parker. However, Mr. Santos asserted his Fifth Amendment privilege against self-incrimination in response to nearly every question asked of him, other than requests to identify himself or a document placed in front of him. Consequently, in making its findings of fact in this civil matter, the court can and does draw an adverse inference against Mr. Santos as to each question on which he invoked his Fifth Amendment privilege against self-incrimination.[53]

After hearing the testimony of Mrs. Ramos and Mr. Le, and considering the other evidence submitted by the Chapter 13 Trustee and the many adverse inferences drawn against Mr. Santos, the court finds that Mr. Santos's story was false and that he lacked all credibility as a witness. The court believes that Mr. Santos falsified the two emails and other documents in order to dupe Steve Le into helping him file a fictitious bankruptcy case, amounting to identity theft against his ex-wife, Cynthia Ramos. It is also likely that Mr. Santos perjured himself during his testimony at the November 18 hearing. As is discussed in more detail below, Mr. Santos's actions are grounds for civil sanctions and for criminal referral to the United States Attorney.[54]

D. **Mrs. Ramos's Testimony.**

Mrs. Ramos testified last at the November 18 hearing, following Mr. Le and Mr. Santos. She said that she had received a phone call from Mr. Santos on September 30, 2019, after having not heard from him in quite some time, and that Mr. Santos asked her to file bankruptcy to save the house they once shared (but which he now occupied). She responded to his request by saying,

---

[53] It is well settled that the court may draw an adverse inference from Mr. Santos's refusal to testify in response to each line of questioning. *See e.g.*, *In re Binnion*, Case No. 13-30234, 2014 WL 1047858, at *9 (Bankr. S.D. Tex. Mar. 18, 2014) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).
[54] *See* discussion *infra* Section IV.C.

"[y]ou are out of your mind. I would never put my family in that situation."[55] She ended her conversation with Mr. Santos having reason to think that she was happy about the prospect of a foreclosure because she could finally sever her last tie to Mr. Santos.[56] Mrs. Ramos also testified that she and Mr. Santos had been divorced for ten years, since 2009.

Unfortunately, Mrs. Ramos received an email from Experian just two days later, on October 2, 2019, notifying her that there had been a change to her credit report because a Chapter 13 bankruptcy Petition had been filed under her social security number.[57] She immediately called the Bankruptcy Clerk's office and received Mr. Le's contact information as the attorney of record.[58] Then, she got in touch with Mr. Le and learned the details behind the bankruptcy filing.

Mrs. Ramos testified that, contrary to Mr. Santos's testimony, she was not out of town for a funeral on September 30, but was in Dallas, at work, easily reachable by phone.[59] Mrs. Ramos said that she did not recognize the email address on the two emails sent to Mr. Le on September 30, 2019 because she had not sent them, and that she did not recognize the purported profit and loss statement for a fictitious business that was attached to one of the emails.[60] Finally, during cross-examination by Mr. Bryant, Mrs. Ramos said that Mr. Le had done everything he possibly could to minimize the harm to her since the moment she notified him that she had not authorized the bankruptcy filing.[61]

The court finds the testimony of Mrs. Ramos to have been credible.

---

[55] ECF 31 at 26:13-25. *Id.* at 25:10-27:15.
[56] *See id.* at 30:20-31:1.
[57] *Id.* at 31:2-16.
[58] *Id.* at 31:17-32:5.
[59] *Id.* at 25:23-26:8.
[60] *Id.* at 32:7-25.
[61] *Id.* at 33:11-23.

V.    **CONCLUSIONS OF LAW**

A.    **The Bankruptcy Code Provisions and Rules that Mr. Le Violated.**

The court concludes that in filing the unauthorized Voluntary Petition, Schedules, SOFA, Verification of Mailing, and other documents using Mrs. Ramos's social security number and former name, Mr. Le acted in bad faith and violated several Bankruptcy Code Provisions, Federal and Local Rules of Bankruptcy Procedure, as well as the ethical rules imposed by the Texas Disciplinary Rules of Professional Conduct ("TDRPC").

1.    **Mr. Le Violated 11 U.S.C. § 526.**

Section 526 of the Bankruptcy Code restricts "debt relief agencies" from undertaking certain actions.[62] Under the Bankruptcy Code, a bankruptcy attorney falls within the definition of a "debt relief agency."[63] Subsection 526(a)(2) specifically prohibits a debt relief agency from making:

> . . .any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading[.][64]

Mr. Le violated 11 U.S.C. § 526(a)(2) in several manners:

- As catalogued in the court's Findings of Fact, Mr. Le violated 11 U.S.C. § 526(a)(2) by making numerous untrue and misleading statements in the Voluntary Petition and its attachments, including the Schedules, the SOFA, and the Verification of Mailing, among others.

- Moreover, the court concludes that Mr. Le's failure to exercise reasonable care caused him to make several untrue statements that he should have known were untrue. Through

---

[62] *See In re Dobbs*, 535 B.R. 675, 683 (Bankr. N.D. Miss. 2015).
[63] *See id.* (citing 11 U.S.C. § 101(12A)).
[64] 11 U.S.C. § 526(a)(2) (West 2019).

reasonable care, he would have realized that the Purported Debtor, Mrs. Ramos, was not involved in the bankruptcy case being filed on her behalf and that it was Mr. Santos who took the credit counseling course and sent the two emails to Mr. Le. And the fact that Mr. Le forged the Purported Debtor's electronic signature at least six times constitutes a violation of 11 U.S.C. § 526(a)(2) for each forgery.

Mr. Le admitted throughout his testimony at the February 3 hearing that he was well aware Mrs. Ramos did not sign the documents or provide any information to him directly. Mr. Le testified that he either received the information used to complete the documents from Mr. Santos or made it up. In fact, Mr. Le admitted that the first time he actually spoke to Mrs. Ramos was when she called him on Wednesday, October 2, 2019—two days after he had already filed the Petition, Schedules, SOFA, and Verification of Mailing, containing a total of six forged electronic signatures in the aggregate.

## 2.    Mr. Le Violated 11 U.S.C. § 527.

Section 527 of the Bankruptcy Code requires attorneys to make certain disclosures or take certain actions:

- Attorneys must provide "clear and conspicuous written notice" advising the debtor that all information disclosed in the required filings and schedules must be "complete, accurate, and truthful" and that failure to comply may result in dismissal and/or sanctions;[65]

- Attorneys must provide prospective debtors with a copy of the statement included in Section 527(b), which is intended to enable prospective debtors to make an informed decision whether or not to file;[66] and

---

[65] *Id.* § 527(a)(2). As discussed in this Memorandum Opinion *supra* Section IV.A.1., attorneys fall within the term "debt relief agency" as it is defined in the Bankruptcy Code.
[66] *See id.* § 527(b).

- Attorneys must either obtain accurate information that their debtor clients are required to disclose or supply their debtor clients with enough directions on how to acquire all the information that they need in order to file.[67]

Given that Mr. Le never actually met with Mrs. Ramos or spoke with her before using her social security number to file bankruptcy, he neglected to perform any of the duties Section 527 required him to perform. Mr. Le did not provide a clear and conspicuous statement to Mrs. Ramos. He did not obtain accurate and truthful information from her before he filed a bankruptcy Petition using her social security number. Consequently, Mr. Le's actions caused direct financial harm to Mrs. Ramos.

> It is imperative that an attorney ensure, prior to filing a bankruptcy petition, that a potential debtor understands all of the consequences of filing bankruptcy and the responsibilities of being a debtor in a bankruptcy case. An attorney must also ensure that a potential debtor, knowing and appreciating the consequences of filing a bankruptcy petition, has the present intention of filing bankruptcy.[68]

For the foregoing reasons, court concludes that Mr. Le violated Section 527 of the Bankruptcy Code.

### 3. Mr. Le Violated 11 U.S.C. § 528.

Section 528 of the Bankruptcy Code governs retainer agreements formed between attorneys and their debtor clients.[69] Section 528 imposes certain requirements on attorneys regarding their retainer agreements, including:

- Attorneys must execute a written contract *with the debtor* that explains clearly and conspicuously (A) the services to be provided and (B) the fees or charges for such services, including terms of payment;[70] and

---

[67] *See id.* § 527(c).
[68] *In re T.H.*, 529 B.R. 112, 139 (Bankr. E.D. Va. 2015).
[69] *See* 11 U.S.C. § 528 (West 2019).
[70] *See id.* §§ 528(a)(1)(A), (B).

- Attorneys must then provide a "fully executed and completed contract" ***to the debtor***.[71]

Mr. Le never formed a written contract with Mrs. Ramos before filing the Petition. He never even spoke with her before filing. Instead, Mr. Le accepted $3,500 in cash from Mr. Santos—whom Mr. Le had good reason to know was the Purported Debtor's ***ex-husband***—and filed the bankruptcy Petition using Mrs. Ramos's social security number, furnished by Mr. Santos.[72] For the foregoing reasons, the court concludes that Mr. Le violated Section 528 of the Bankruptcy Code.

### 4. Mr. Le Violated Federal Rule of Bankruptcy Procedure 1008.

Federal Rule of Bankruptcy Procedure 1008 is a brief Rule, but it operates as a vitally important safeguard against fraudulent and unauthorized filings:

> All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.[73]

---

[71] *See id.* § 528(b).

[72] *See* discussion *supra* Section III.B.; *see also* ECF 31 at 12:3-7.

[73] Fed. R. Bankr. P. 1008. The cross-referenced declaration found in 28 U.S.C. § 1746. Unsworn declarations under penalty of perjury is as follows:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746 (West 2019).

Rule 1008 has been interpreted to impose requirements on two parties: the debtor and the debtor's attorney.[74] Under Rule 1008, ***the debtor must sign*** "all petitions, lists, schedules, statements and amendments thereto" as a means of (i) authorizing the filing of the documents, (ii) verifying, under penalty of perjury, that the debtor has reviewed the information, and (iii) verifying that the information is "truthful and accurate to a degree that only the debtor [*herself*] could verify."[75] Additionally, under Rule 1008, ***an attorney*** "who files schedules and statements on a debtor's behalf ***makes a certification regarding the representations contained therein"—one which constitutes an "endorsement" formed after a reasonable inquiry***.[76]

Mr. Le filed the Petition, Schedules, SOFA and more on behalf of Mrs. Ramos without first (a) making a reasonable inquiry (or any inquiry whatsoever) into the accuracy of the information, which he received primarily from Mr. Santos, or (b) obtaining Mrs. Ramos's wet signature. Had Mr. Le abided by his duties under Rule 1008, the bankruptcy Petition would never have been filed and Mrs. Ramos would never have suffered the financial harm she has credibly described. Mr. Le's actions violated Rule 1008.

### 5. Mr. Le Violated Federal Rule of Bankruptcy Procedure 5005.

Federal Rule of Bankruptcy Procedure 5005 is related to Rule 1008 and establishes the legal significance of making an electronic filing:

> (2) Electronic filing and signing
> …
> (C) Signing. ***A filing made through a person's electronic-filing account*** and authorized by that person, together with that person's name on a signature block, ***constitutes the person's signature***.

---

[74] *See In re Dobbs*, 535 B.R. at 685-86.
[75] *See id.* (citing *Briggs v. LaBarge (In re Phillips)*, 317 B.R. 518, 523 (8th Cir. B.A.P. 2004)).
[76] *See id.* (citing *In re Withrow*, 405 B.R. 505, 512 (1st Cir. B.A.P. 2009)).

(D) Same as a Written Paper. ***A paper filed electronically is a written paper for purposes of these rules***, the Federal Rules of Civil Procedure made applicable by these rules, and § 107 of the Code.[77]

In other words, when an attorney files documents electronically in a bankruptcy case, he represents to the court and the world that he has "secured an originally executed petition [or other document] ***physically signed by the debtor prior to electronically filing*** the case [or document]."[78] Mr. Le admitted in his testimony that he did not obtain an original, physical signature from Mrs. Ramos before he electronically signed "/s/ Cynthia Santos" at least six times in the documents filed with this court on September 30, 2019. Thus, Mr. Le violated Rule 5005 by intentionally misrepresenting that he had secured original, physical documents ***signed by Mrs. Ramos*** prior to electronically filing the Petition and other documents.

## 6.    Mr. Le Violated Federal Rule of Bankruptcy Procedure 9011.

Rule 9011 is a fundamental rule in protecting the integrity of the bankruptcy courts. It establishes guidelines governing the signing of papers filed with the court, representations made to the court, and the parameters of sanctions that may be imposed on parties or counsel who violate Rule 9011.[79] Judge Woodard neatly summarized Rule 9011, subsection (b) as follows:

> by presenting a signed petition to the court, an attorney certifies to the court that to the best of the attorney's knowledge, formed after reasonable inquiry, that (1) the petition is not being presented for an improper purpose; (2) that the legal contentions therein are warranted by existing law; (3) that the allegations and factual contentions have evidentiary support; and (4) the denials of factual contentions are warranted.[80]

---

[77] Fed. R. Bankr. P. 5005(a)(2).

[78] *See In re Dobbs*, 535 B.R. at 686 (emphasis added) (quoting *In re Wenk*, 296 B.R. 719, 724 (Bankr. E.D. Va. 2002)).

[79] *See* Fed. R. Bankr. P. 9011; *see also In re Dobbs*, 535 B.R. at 686-88 (discussing violations of Fed. R. Bankr. P. 9011).

[80] *In re Dobbs*, 535 B.R. at 686.

Furthermore, Subsection (c) of Rule 9011 empowers the court, upon a motion of a party-in-interest or upon the court's own initiative, to impose sanctions on those who violate Rule 9011.[81] Lastly, in determining whether a person violated Rule 9011, the court does not need to find bad faith; rather, the court needs to find only that the conduct was "objectively unreasonable . . . under the circumstances."[82]

The court concludes that Mr. Le's filing of falsified documents was objectively unreasonable and that his willful violations were an abuse of the judicial process, despite his purported motive of simply wanting to help save a house. Specifically:

- It was objectively unreasonable under the circumstances for Mr. Le to believe that Mr. Santos could file a voluntary Petition on behalf of his ex-wife, Mrs. Ramos.[83] Mr. Santos quite likely committed one or more crimes, including identity theft and bankruptcy fraud, when he used his ex-wife's social security number to file bankruptcy without her authorization, and Mr. Le enabled Mr. Santos's behavior. That Mr. Le may have been well-intentioned does not absolve him of responsibility for his unethical actions.

- It was objectively unreasonable under the circumstances for Mr. Le to file Schedules, a SOFA and a Statement of Current Monthly Income with falsified information and/or forged signatures on September 30, 2019. Federal Rule of Bankruptcy Procedure 1007(c) affords debtor's counsel fourteen (14) days from the Petition date to file these required documents.[84] Mr. Le learned from Mrs. Ramos herself that the bankruptcy was

---

[81] Fed. R. Bankr. P. 9011(c).

[82] *See In re Dobbs*, 535 B.R. at 686-87 (quoting *In re Taylor*, 655 F.3d 274, 282 (3d Cir. 2011); *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 551 (1991)).

[83] As noted by Judge Woodard, "only the prospective debtor may file a bankruptcy petition on his or her own behalf. Pursuant to 11 U.S.C. § 301(a), a voluntary case 'is commenced by the filing with the bankruptcy court of a petition under such chapter *by* an entity that may be a debtor under such chapter' . . . By their very nature, *voluntary* bankruptcy cases must be undertaken on the debtor's *own volition*." *In re Dobbs*, 535 B.R. at 687 (emphasis added).

[84] Fed. R. Bankr. P. 1007(c).

unauthorized a mere **two days** after filing the Petition. Therefore, Mr. Le could have avoided committing multiple forgeries and making additional misrepresentations to the court had he simply waited to speak with Mrs. Ramos before filing anything other than the Petition.

- It was objectively unreasonable under the circumstances for Mr. Le to neglect his duty to perform a reasonable investigation or inquiry regardless of the imminent foreclosure, or any other exigent circumstances, he may have sought to prevent.[85]

- It was objectively unreasonable under the circumstances for Mr. Le to make no effort whatsoever to verify the accuracy of the information with the Purported Debtor.[86]

- Mr. Le further violated Rule 9011 by forging the Purported Debtor's signature at least six times in documents filed with the court and, thus, misrepresenting to the court that "the allegations and other factual contentions have evidentiary support."[87]

Mr. Le's actions were objectively unreasonable on several grounds and, for the foregoing reasons, the court concludes that Mr. Le violated Rule 9011.

### 7. Mr. Le Violated the Texas Disciplinary Rules of Professional Conduct (the "TDRPC").

The court concludes that Mr. Le violated other rules governing the practice of bankruptcy law, beyond the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. For instance, when considering attorney misconduct and Rule 9011 violations, a bankruptcy court may also take into

---

[85] "[T]he fact that a client's home is scheduled for imminent foreclosure does not excuse the reasonable inquiry requirement of Rule 9011(b)." *In re Dobbs*, 535 B.R. at 688 (quoting *In re Tran*, No. 14-11837, 2014 WL 5421575, at *7 (Bankr. E.D. Va. Oct. 17, 2014)); *see also In re T.H.*, 529 B.R. at 128 ("The Court does not consider even the most exigent of circumstances as a justification for an attorney to disregard or ignore the duties of care and due diligence . . .").

[86] "There can be no 'inquiry reasonable under the circumstances' where the attorney has not met with the client prior to filing the petition." *In re Dobbs*, 535 B.R. at 688 (quoting *In re Tran*, 2014 WL 5421575, at *7).

[87] *Id.* (citing Fed. R. Bankr. P. 9011(b)(3)); *see also In re Phillips*, 317 B.R. at 524 (holding that "the petition [the attorney] filed did not have the debtor's original signature and therefore lacked a verification of the facts. With no verification, the factual contentions have no evidentiary support and thus the petition violate[d] Rule 9011(b)(3).").

consideration the rules of professional conduct of the state in which the court sits.[88] Some of the applicable TDRPC are as follows:

- Rule 1.01. Competent and Diligent Representation—prohibiting lawyers from "frequently fail[ing] to carry out completely the obligations that the lawyer owes to a client or clients."[89] In this odd fact scenario before the court, it is hard to define who should be defined as the real client of Mr. Le. However, having listed Cynthia Santos as the debtor on the Voluntary Chapter 13 Petition that he filed and his purported client, Mr. Le owed an ethical duty to competently and diligently represent her interests. Yet, every action he took before learning that the bankruptcy was unauthorized was an utter failure of his duties.

- Rule 1.02. Scope and Objectives of Representation—prohibiting a lawyer from assisting a client to engage in conduct that the lawyer knows is criminal or fraudulent and requiring a lawyer to "promptly make reasonable efforts . . . to dissuade the client from committing the crime or fraud."[90] Mr. Le, having seemingly accepted Mr. Santos as a client, should have heeded the red flags regarding this unauthorized bankruptcy filing and counseled Mr. Santos on the consequences of bankruptcy fraud, perjury, and identity theft. He did not. Instead, Mr. Le enabled Mr. Santos to engage in potentially criminal behavior.

- Rule 1.03. Communication—requiring a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."[91] Mr. Le failed yet another duty that he owed to Mrs. Ramos—his duty counsel her to enable her to make an informed decision as to whether *she*, not Mr. Santos, wanted to file a bankruptcy Petition with her name and social security number on it.

---

[88] *In re Dobbs*, 535 B.R. at 689 (citing *In re Zuniga*, 332 B.R. 760, 772 (Bankr. S.D. Tex. 2005)).
[89] TX ST RPC Rule 1.01(b)(2).
[90] TX ST RPC Rule 1.02(c), (d) and (e).
[91] TX ST RPC Rule 1.03(b).

- Rule 3.03. Candor Toward the Tribunal—prohibiting a lawyer from knowingly making a false statement of material fact or law, failing to disclose a fact to the tribunal when disclosure is necessary to avoid a criminal or fraudulent act, offering or using evidence that the lawyer knows to be false, and failing to make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence when the lawyer comes to know of its falsity.[92] The court does not need to repeat the myriad misrepresentations Mr. Le intentionally made in the documents he filed with this court on September 30, 2019, each of which constitutes a violation of Rule 3.03.[93]

Before a law student or other prospective licensee can become eligible to practice law in the state of Texas, the state requires them to take a Professional Responsibility course in law school and pass the Multistate Professional Responsibility Examination (which tests the students' understanding of model rules nearly identical to those published by the State Bar of Texas). No attorney, including Mr. Le, can be excused from violating these fundamental, basic rules—for any reason.

        **8.**      **Local Bankruptcy Rule 2090-2(b) Authorizes this Court to Discipline Mr. Le for Unethical Behavior and Failure to Comply with Other Rules.**

Finally, Local Rule 2090-2(b) permits a "Presiding Judge, after giving opportunity to show cause to the contrary, to take ***any*** appropriate disciplinary action against a member of the bar for:

(1) conduct unbecoming a member of the bar;

(2) failure to comply with any rule or order of the Bankruptcy Court; [or]

(3) unethical behavior . . ."[94]

---

[92] TX ST RPC Rule 3.03(a)(1), (2), (5) and Rule 3.03(b).
[93] *See* Discussion *supra* Section III.B.
[94] N.D. Tex. L.B.R. 2090-2(b)(1)-(3).

Furthermore, the Local Rules define "unethical behavior" as "conduct undertaken in or related to a case or proceeding in this court that violates the Texas Disciplinary Rules of Professional Conduct."[95] And, as just discussed, Mr. Le violated the TDRPC. Thus, there are at least three grounds stated in the Local Rules upon which this court may take disciplinary action against Mr. Le as a member of the Northern District of Texas bar.

**B. Sanctions to be Imposed on Mr. Le: Indefinite Suspension, Disgorgement of Fees, and Additional Ethics CLE.**

**1. A Note on the Case Law this Court Considered.**

At the February 3 hearing, Mr. Le's counsel presented to the court a well-reasoned Memorandum Opinion from the Southern District of Texas from a case called *In re Stomberg*.[96] In the opinion, the court ordered a Chapter 11 debtor's attorney named Braun to appear and show cause why he should not be sanctioned for electronically filing certain Schedules and a SOFA without first obtaining the debtor's original signatures (*i.e.* by forging the debtor's electronic signature).[97] The court found that Braun had violated numerous Bankruptcy Code Provisions and Rules, but the court ultimately limited sanctions to the monetary variety, declining to disbar or suspend Braun despite multiple instances of ethical violations and disciplinary reviews.[98] Mr. Le's counsel argued that, in this case, should Mr. Le face sanctions, they should be limited to monetary sanctions because it would be inappropriate to suspend or disbar Mr. Le (who, until now, has had a clean disciplinary record)—noting that in *In re Stomberg*, the court refused to disbar or suspend Braun, a repeat offender.[99] Mr. Bryant's reliance on *In re Stomberg* is misplaced. Whereas Braun faced sanctions for forging the debtor's signature on Schedules and the SOFA, ***but not on the***

---

[95] N.D. Tex. L.B.R. 2090-2(d).
[96] 487 B.R. 775 (Bankr. S.D. Tex. 2013).
[97] *Id.* at 780.
[98] *See id.* at 822-24.
[99] *See id.*; *see also* Audio Recording, 2/3/2020 Hearing at 12:22:00: p.m.

***Petition, which the debtor had voluntarily signed***, here, ***Mr. Le forged the Purported Debtor's signature on the Petition***, initiating a bankruptcy that never should have happened in the first place.[100] There is a ***notable difference*** between forging signatures on Schedules in a bankruptcy case that the debtor has already authorized and forging a signature on a Petition to file an unauthorized bankruptcy case. For that reason, this court chose not to follow *In re Stomberg* in considering the appropriate sanctions to impose on Mr. Le.

On the other hand, the court found Judge Jason Woodard's comprehensive, well-reasoned Memorandum Opinion in *In re Dobbs* instrumental in guiding the court's analysis here.[101] *In re Dobbs* involved facts that were similar to the facts now before this court—Judge Woodard ordered an attorney, Labovitz, to show cause why he should not be sanctioned after Labovitz ***forged a former client's signature on a Voluntary Chapter 13 Petition*** and filed a case in the Purported Debtor's name without notice to and without authorization from the Purported Debtor.[102] After conducting an evidentiary hearing and finding that Labovitz had intentionally violated many of the same provisions and rules that this court believes Mr. Le intentionally violated, Judge Woodard permanently disbarred Labovitz from the practice of law in the Bankruptcy Court for the Northern District of Mississippi.[103] And while the court does not believe that Mr. Le should be permanently disbarred because his conduct does not rise to the level of Labovitz's, the court does believe suspension is appropriate, in addition to monetary sanctions and court-ordered ethics training.

### 2. Indefinite Suspension, Disgorgement of Fees, and Ethics CLE are Appropriate.

---

[100] *See In re Stomberg*, 487 B.R. at 784 ("On December 23, 2010, the Debtor went to the Firm's office and met with Braun . . . One purpose of the meeting was for the Debtor to sign the Chapter 11 petition (the Petition), which he in fact did . . . Then, Braun electronically filed the 'barebones' Petition, ***which both he and the Debtor had signed***, initiating the Debtor's Chapter 11 case. [Doc. No. 1]. By signing the Petition as counsel for the Debtor, Braun became the attorney-in-charge of the Debtor's case.").

[101] 536 B.R. 675 (Bankr. N.D. Miss. 2015).

[102] *Id.* at 678-79.

[103] *Id.* at 699.

After hearing Mr. Le's contrite testimony, it is clear to the court that he had some well-meaning intentions: Mr. Le sought to help Mr. Santos and he never wished to hurt Mrs. Ramos. But the many Rules and Bankruptcy Code Provisions that Mr. Le shirked were put into place to protect lawyers, their clients, and innocent third parties alike. By failing to adhere to those rules, Mr. Le helped perpetuate a financial cataclysm in the life of Mrs. Ramos.[104]

The court expects Mr. Le—and, indeed, ***all attorneys***—to know the rather obvious truism that ***forging a debtor's signature and presenting it to the court as if it were an authentic signature is never reasonable, under any circumstances***. The Bankruptcy Clerk's records show that Mr. Le has filed 120 bankruptcy cases since 2010, a year after he was licensed to practice law in Texas, and that he currently has nine active bankruptcy cases in the Northern District of Texas. Mr. Le is not an inexperienced bankruptcy practitioner. On the contrary, he is highly experienced. He should have appreciated the risk he accepted when he decided to file a Bankruptcy Petition using the social security number of somebody he had never met. Unfortunately for everyone, the risk materialized, and now Mr. Le must face the consequences. The court must be vigilant in protecting innocent people like Mrs. Ramos from what amounts to identity theft in bankruptcy. Sanctioning the lawyers who facilitate it, regardless of their alleged well-meaning intentions, is one of the only tools the court has at its disposal to prevent this kind of reckless behavior from reoccurring. Accordingly, for the foregoing reasons, it is

**ORDERED, ADJUDGED** and **DECREED** that Steve Le is hereby **SUSPENDED FROM THE PRACTICE OF LAW** in the United States Bankruptcy Court for the Northern District of Texas effective **March 17, 2020**, at which time the Clerk of the Bankruptcy Court is directed to terminate Mr. Le's CM/ECF privileges. Within seven (7) days of the date of entry of

---

[104] "The road to hell is paved with good intentions." HENRY G. BOHN, A HANDBOOK OF PROVERBS, 514 (London, 1st ed. 1855).

this Order, Mr. Le shall give notice to each of his clients with cases or adversary proceedings pending in this court of his inability to act as an attorney in the bankruptcy court. The notice shall advise his clients to promptly substitute another attorney in his place, otherwise they will be proceeding *pro se*. Mr. Le shall do everything within his power to facilitate the transition of his live cases to new counsel, including, but not limited to, transmission of electronic and paper documents, or face additional sanctions. The Bankruptcy Clerk is further directed to provide notice of Mr. Le's inability to practice law in this court to all parties listed on the matrices for any pending cases and adversary proceedings in which Mr. Le is an attorney of record. Mr. Le may petition the Chief Judge of the Bankruptcy Court for the Northern District of Texas for reinstatement after a period of **TWO YEARS** from the entry date of this Order, at which time the presiding Chief Judge may conduct a hearing to consider reinstatement. Notice of that hearing will be provided to the United States Trustee, the Chapter 13 Trustee, and to such other parties as the court deems appropriate. It is further

**ORDERED, ADJUDGED** and **DECREED** that Steve Le is hereby **PROHIBITED** from filing any new bankruptcy cases in this court effective immediately upon entry of this Order. Additionally, because of the ethical violations Mr. Le committed, the court believed he requires additional continuing legal education. Thus, it is further

**ORDERED, ADJUDGED** and **DECREED** that Steve Le shall, within the next 12 months, attend 15 hours of ethics continuing legal education, in addition to the standard requirements imposed by the State of Texas. Mr. Le shall provide proof of such attendance to the court *in camera* no later than **March 17, 2021**. Finally, it is further

**ORDERED, ADJUDGED** and **DECREED** that Steve Le shall pay $3,500 to Cynthia Ramos, the victim in this case, representing the disgorgement of the fee Mr. Le received from Mr.

Santos. This sanction shall be paid in full to Mrs. Ramos within thirty (30) days of the entry of this Order. This sanction is not punitive but is the appropriate measure to deter Mr. Le and other attorneys that practice before this court from repeating such disturbing, reckless conduct in the future.

### C. Sanctions to be Imposed on Mr. Santos: Ten-Year Bar on Filing Bankruptcy; Criminal Referral to the United States Attorney.

After considering all the evidence, the court found that Gabriel Santos not only abused the bankruptcy system but also manipulated Steve Le into assisting Mr. Santos in what appears to be a scheme to commit bankruptcy fraud and identity theft against his ex-wife, Cynthia Ramos. Bankruptcy fraud is a crime:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or both.[105]

It is likewise a crime to commit perjury in a Title 11 proceeding and falsify documents in contemplation of filing a bankruptcy case under Title 11:

> A person who—
>
> …
>
> (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11;

---

[105] 18 U.S.C. § 157 (West 2019).

(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11; [or]

…

(8) after the filing of a case under title 11 or in contemplation thereof, knowingly and fraudulently . . . falsifies, or makes a false entry in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of a debtor . . .

shall be fined under this title, imprisoned not more than 5 years, or both.[106]

Therefore, in light of Mr. Santos's apparent scheme to defraud the court, Mr. Le, Mrs. Ramos, and the mortgagee of his house, and in light of Mr. Santos's false oaths or representations in a proceeding under Title 11, the court will be making a criminal referral to the United States Attorney. Finally, apart from the criminal referral, it is also hereby

**ORDERED, ADJUDGED** and **DECREED** that Gabriel Santos shall be prohibited from filing bankruptcy for a period of ten years from the entry date of this Order.

**#### END OF MEMORANDUM OPINION AND ORDER ####**

---

[106] 18 U.S.C. § 152 (West 2019).